UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

Michael Mavashev,

      Debtor.
-------------------------------------------------------------x

Chapter 7

Case No. 14-46442-cec

# DECISION

## APPEARANCES

Alla Kachan, Esq.
3099 Coney Island Avenue
3rd Floor
Brooklyn, NY 11235
*Counsel for the Debtor*

Morris Fateha, Esq.
911 Avenue U
Brooklyn, New York 11223
*Counsel for Elie Hanono and
Elegant Jewelry NY Inc.*

Leo Fox, Esq.
630 Third Avenue, 18th Floor
New York, NY 10017
*Counsel for the Chapter 7 Trustee*

CARLA E. CRAIG
Chief United States Bankruptcy Judge

INTRODUCTION

This matter comes before the Court on the Chapter 7 Trustee's motion to compel document production pursuant to the Court's April 28, 2016 order directing examination of Elie Hanono ("Hanono") and Elegant Jewelry NY Inc. ("Elegant Jewelry"), under Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").[1] Matthew C. Harrison, Trustee of the Chapter 7 estate (the "Trustee"), seeks discovery of a pawn ticket evidencing transactions between Alik Pinhasov ("Pinhasov"), Hanono, and Elegant Jewelry. For the reasons stated below, the Trustee's motion is granted.

JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1996, as amended by order dated December 5, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O.)

BACKGROUND

The facts relevant to this motion are not in dispute, except as otherwise indicated.

On December 12, 2014, Michael Mavashev (the "Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. (ECF No. 1.)[2] On February 27, 2015, this Court issued an order converting the case to one under Chapter 7 of the Bankruptcy Code. (Order Converting Case to Chapter 7, ECF No. 30.) On March 2, 2015, Gregory Messer was appointed as trustee of the Debtor's bankruptcy estate. (Notice of Appointment of Trustee on Conversion, ECF No. 32.) On

---

[1] Hereinafter, all references to "Rule 2004" refer to Rule 2004 of the Federal Rules of Bankruptcy Procedure.
[2] All references to "ECF No." refer to documents filed on the docket in this case, Case No. 14-46442, unless otherwise indicated.

1

June 17, 2015, Matthew C. Harrison was appointed successor trustee, and Gregory Messer was removed from the case. (Notice of Appointment of Successor Trustee, ECF No. 46.)

On the Debtor's Schedule B, the Debtor lists accounts receivable for $300,000, with the obligor identified as LA Diamonds, Inc. ("LA Diamonds"). (Chapter 11 Schedule B, ECF No. 1, p. 13.) On July 10, 2015, the Court ordered a Rule 2004 Examination of the Debtor. (Stipulation and Order to Conduct Rule 2004 Examination of Debtor, ECF No. 54.) At the Rule 2004 examination held on August 13, 2015, the Debtor testified that he sold stones to LA Diamonds in a series of five to fifteen transactions in April through August of 2014. (Motion for 2004 Examination of LA Diamonds, Inc., ¶ 3, ECF No. 66.) The Debtor delivered a total of $300,000 of stones to LA Diamonds, but was never paid for those stones. (Id.) The Debtor also testified that he started delivering merchandise to LA Diamonds in April or May of 2014 and then delivered more merchandise in subsequent transactions over several months. (Id., ¶ 4.) LA Diamonds gave the Debtor checks after each transaction, but declined to date the checks, and the Debtor was instructed not to deposit the checks. (Id.) When the Debtor attempted to deposit the first check in August of 2015, he was told that the bank accounts were closed. (Id.) The Debtor continued dealing with LA Diamonds, purchasing merchandise and acting as a broker for a deal with Gold Seven of Miami. (Id. ¶ 6.) Prompted by Debtor's testimony regarding dealings with LA Diamonds, on October 1, 2015, the Trustee requested documents and records from LA Diamonds. (Id. ¶ 7-8.) The Trustee also requested an examination pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") of the principal of LA Diamonds, Pinhasov. (Id.)

On January 8, 2016, Shai Sarvian ("Sarvian") was examined by the Trustee's counsel pursuant to Rule 2004. (Application in Support of Order Compelling Rule 2004 Examination of Elie Hanono and Elegant Jewelry, ¶ 4, ECF No. 77.) At his Rule 2004 examination, Sarvian

testified that Pinhasov entered into an arrangement with the Debtor to obtain diamonds for no consideration and to sell them to pawn shops.  (Id. ¶ 5.)  Sarvian testified that certain of those diamonds were pawned by Elegant Jewelry, that Elegant Jewelry is a pawn shop that deals in this kind of merchandise, and "this is something that everybody knows in the market."  (Id.)  Sarvian testified that because Elegant Jewelry is also a diamond dealer, the principals know the source of the merchandise.  (Rule 2004 Examination of Shai Sarvian, 71:3-8, ECF No. 77.)  Sarvian stated that Elegant Jewelry knows Debtor and Pinhasov well, and that the Debtor and Pinhasov have purchased diamonds of this nature from Elegant Jewelry, thus, investigating Elegant Jewelry to find the Debtor's merchandise is a "good lead."  (Id. at 69:24-25.)

On February 29, 2016, the Trustee filed a motion to compel a Rule 2004 Examination of Hanono and Elegant Jewelry (collectively, the "Nonparty Witnesses").  (Motion for 2004 Examination of Elie Hanono and Elegant Jewelry NY Inc., ECF No. 77.)  Hanono is the principal of Elegant Jewelry. (Id.) Hanono objected to the examination, asserting his Fifth Amendment right against self-incrimination. (Objection to Motion for 2004 Examination of Elie Hanono and Elegant Jewelry NY Inc.  ("Objection to 2004 Examination of Hanono and Elegant"), ¶ 4-5, ECF No. 80.) Counsel for the Nonparty Witnesses asserted that any questions regarding the purchase and sale of stolen diamonds falls within the ambit of the Fifth Amendment privilege.  (Id.)

On April 27, 2016, the Court issued an Order compelling the Rule 2004 examination of Hanono and Elegant Jewelry, as well as directing the production of documents.  (Order Compelling 2004 Examination of Elie Hanono and Elegant Jewelry NY Inc., ECF No. 86) ("2004 Order"). Nothing in the 2004 Order affected the witness's right to refuse to answer questions posed at the examination on the basis of the Fifth Amendment privilege.  As the Trustee's counsel noted at the hearing on this matter, "[i]f counsel wants to plead the Fifth, he's welcome to when a specific

3

question is presented, but we don't think it's appropriate to do so as a blanket statement before a 2004 Exam has even begun." (Transcript of September 27, 2016 Hearing, 5:23-6:1, ECF 101.) At the Examination, Hanono, in the presence of his attorney, testified extensively as to the pawn transaction with Pinhasov, including the cost and description of the pawned item. (Brief in Support of Compelling Turnover, ¶ 2, ECF No. 91.) Hanono also testified that he advanced a large amount of money for a high value diamond, in return for a small commission. (Id.) During the deposition, Hanono had in his possession a pawn ticket evidencing the transaction in question (the "Pawn Ticket). (Id. at ¶ 3) When the Trustee requested to see a copy of the Pawn Ticket, Hanono, through his attorney, refused to turn over the Pawn Ticket, citing the Fifth Amendment privilege. (Id.) In response to the Trustee's request for a ruling on the discovery dispute, the Court directed the Trustee and Hanono to file briefs in support of their respective positions. (Id.)

On June 21, 2016, the Nonparty Witnesses filed objections to the Trustee's request to compel the production of the Pawn Ticket. (Brief of Nonparty Witnesses in Support of Application to Strike Document Demands of the Trustee ("Application to Strike"), ECF No. 90.) On June 28, 2016, the Court heard arguments on the discovery dispute. (Id.) The Nonparty Witnesses asserted that the documents requested were irrelevant to the Chapter 7 case and the production of such documents by the Nonparty Witnesses would violate Hanono's Fifth Amendment right against self-incrimination. (Id. at ¶ 3-4.)

## DISCUSSION

I.   Rule 2004 Examination of a Nonparty Witness

Bankruptcy Rule 2004 allows the Court, "on motion of any party in interest" to "order the examination of any entity." Fed. R. Bankr. P. 2004(a). "Rule 2004 discovery is broader than discovery under the Federal Rules of Civil Procedure, and has fewer procedural safeguards. It can

4

be legitimately compared to a fishing expedition." In re Drexel Burnham Lambert Grp., Inc., 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991). "The purpose of such a broad discovery tool is to assist the Trustee in revealing the nature and extent of the estate; ascertaining assets; and discovering whether any wrongdoing has occurred." In re Corso, 328 B.R. 375, 383 (E.D.N.Y. 2005).

As stated above, Trustee is seeking production of the Pawn Ticket evidencing a transaction between Elegant Jewelry, Hanono, and Pinhasov. The record reflects Hanono's testimony that the Pawn Ticket in question is a business record of customer transactions. Hanono brought the Pawn Ticket to the deposition, along with other related information. The Pawn Ticket contained information such as a list of the collateral received to secure the loan, the outstanding amount due, and the interest rate on the loan for the pawned item. (Letter Re: Deposition Testimony of Elegant Jewelry by Eli Hanono ("Nonparty Witness's Testimony Letter"), at 1, ECF No. 94.)

In connection with his application for a 2004 examination of the Nonparty Witnesses, the Court's order dated April 27, 2016 authorized the trustee to issue a subpoena. (Motion for 2004 Examination of Elie Hanono and Elegant Jewelry, ECF No. 77.) The subpoena included "all records concerning all transactions, communications, related documents between the Debtor, MMD Trade Corp. (the Debtor's Company) ("MMD"), and Elegant, the principals of Elegant [Jewelry] (equity holders, officers, directors, employees of Elegant)…and all transactions, communications, related documents, notations, etc., between the Debtor and any entity or individual who was acting at the behest or in concert with Elegant." (Id. at ¶ 6.) Information elicited by testimony in the Rule 2004 examinations of Sarvian, the Debtor, and Hanono provided the Trustee with a good faith basis to request production of the Pawn Ticket, because the Pawn Ticket is documentary evidence of the transactions between Pinhasov and the Nonparty Witnesses, which may have involved the Debtor, as a partner of Pinhasov, or otherwise acting in concert with

5

him. In re Coffee Cupboard, Inc., 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (The scope of a 2004 examination is very broad, and it should only be used for the "legitimate purpose of obtaining information relating to the 'acts, conduct, or property or the liabilities and the financial condition of the debtor.'")

II.     The Fifth Amendment

The Fifth Amendment of the United States Constitution prohibits compelled self-incrimination. See United States v. Doe, 465 U.S. 605, 610 (1984) (citing Fisher v. United States, 425 U.S. 391, 396 (1976).) The right against self-incrimination may be asserted in "any civil, criminal, or administrative" proceeding. Kastigar v. United States, 406 U.S. 441 (1972); see also In re Lederman, 140 B.R. 49, 50 (Bankr. E.D.N.Y. 1992) (applying Fifth Amendment privilege in a Chapter 11 bankruptcy case.) As a threshold matter, under the "collective entity rule," corporations cannot avail themselves of the Fifth Amendment privilege against self-incrimination. Braswell v. United States, 487 U.S. 99, 102, 108 S. Ct. 2284, 2287, 101 L. Ed. 2d 98 (1988) ("it is well established that such artificial entities are not protected by the Fifth Amendment."). Therefore, Elegant Jewelry may not seek refuge under the Fifth Amendment.

Furthermore, Hanono, in his capacity as principal of Elegant Jewelry, may not invoke the Fifth Amendment privilege. A corollary of the "collective entity" rule is that "the custodian of corporate records, who acts as a representative of the corporation, cannot refuse to produce records on Fifth Amendment grounds." In re Grand Jury Subpoena Issued June 18, 2009, 593 F.3d 155, 158 (2d Cir. 2010). "This is true [regardless of] whether the subpoena is directed to the corporation itself or to the custodian in his representative capacity, and 'regardless of how small the corporation may be.'" Id. (quoting Bellis v. United States, 417 U.S. 85, 90, 94 (1974)).

6

Hanono also asserts the Fifth Amendment in his individual capacity. "The Fifth Amendment protects the person asserting the privilege only from *compelled* self-incrimination." Doe, 465 U.S. 605, 610 (1984). If the creation of business records is voluntary, the element of compulsion is not present. Id. "Although the contents of a document may not be privileged, the act of producing the document may be." Id. at 612; see Bellis, 417 U.S. 85, 87 (1974) ("It has long been established ... that the Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony."). Indeed, "[t]he act of producing evidence in response to a subpoena . . . has communicative aspects of its own, wholly aside from the contents of the papers produced." Fisher v. United States, 425 U.S. 391, 410 (1976). "Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control" by the witness. Id. Accordingly, a subpoena for documents may constitute compulsion if the existence, possession, or control of the documents are unknown to the government. United States v. Fox, 721 F.2d 32, 36 (2d Cir. 1983.) "Conversely, there is no privilege if the existence, location or authenticity is a 'foregone conclusion.'" In re Schick, 215 B.R. 4, 9 (Bankr. S.D.N.Y. 1997) (quoting Fisher, 425 U.S. at 411).

"The invocation of the "act of production" privilege implicates a two part inquiry: (1) the court must determine whether the production of documents is testimonial, and (2) the party asserting the privilege must show that it is incriminating, i.e., that it provides 'a link in the chain of incrimination.'" Id. (quoting In re DG Acquisition Corp., 208 B.R. 323, 330 (Bankr. S.D.N.Y. 1997.) "The party does not discharge the burden simply by asserting that he will incriminate himself by producing the documents." Id. (citing Hoffman v. United States, 341 U.S. 479, 485, (1951)).

Assuming, *arguendo*, that production of the Pawn Ticket is testimonial, the Nonparty Witnesses have failed to carry their burden to demonstrate that production is incriminating. It is asserted that the discovery sought relates to a convicted felon, Pinhasov, which may lead to criminal charges against the Nonparty Witnesses. (Application to Strike, ECF No. 90, ¶ 2, 4.) However, even if the business relationship and transactions between Pinhasov and Hanono are incriminating, Hanono has already testified to existence of the relationship and business transactions on the record. (See Nonparty Witness's Testimony Letter, ECF No. 94.)

The Court held a hearing on June 28, 2016, providing Hanono with an opportunity to explain why the Trustee's motion to compel should be denied. (Transcript of September 14, 2016 Hearing, ECF No. 98.) Questions were posed regarding whether the ticket contained additional information that has not yet already been testified to. Counsel for Hanono was unable to explain why the production of the Pawn Ticket would further incriminate his client. In fact, counsel specifically stated that "there's nothing on that Pawn Ticket that's incriminating in any [way]." (ECF No. 98.) Counsel's assertion that the ticket linked Pinhasov to Hanono does not provide an additional link in the chain of incrimination because the relationship was already testified to at Hanono's 2004 examination. Counsel for Hanono was given numerous opportunities to show that the Pawn Ticket contains incriminating information that was not already revealed during Hanono's 2004 examination, but has failed to do so.

Furthermore, any Fifth Amendment privilege relating to testimony concerning the transaction between the Nonparty Witnesses and Hanono reflected in the Pawn Ticket has been waived. The Nonparty Witnesses invoked the Fifth Amendment as a defense to the original motion for a Rule 2004 Examination. (Objection to 2004 Examination of Hanono and Elegant, ¶ 4-5, ECF No. 80.) However, during the examination, Hanono's attorney did not instruct his client to remain

silent in response to questions about business dealings with the Debtor and Pinhasov. (Transcript of August 13, 2015 Deposition, p. 12-26, ECF No. 94.) Hanono proceeded to testify in detail about the pawn transaction with Pinhasov, including the cost and description of the pawned item. (Id. 11: 5-19.) "When a party testifies voluntarily, and therefore controls the extent of disclosure, '[t]he privilege is waived for the matters to which the witness testifies.'" OSRecovery, Inc. v. One Groupe Int'l, Inc., 262 F. Supp. 2d 302, 307–08 (S.D.N.Y. 2003) (quoting Brown v. United States, 356 U.S. 148, 154–55 (1958).) Even if the Nonparty Witnesses had a Fifth Amendment right with regard to production of the pawn ticket, Hanono waived that right by voluntarily testifying in response to the Trustee's questions about the transaction. Lederman v. Rezak (In re Lederman), 140 B.R. 49 (Bankr. E.D.N.Y. 1992) (Debtor waived or lost whatever Fifth Amendment privilege he enjoyed in financial records that were subject of production request by producing all of his financial records, as represented in disclosure statement, for inspection by creditors steering committee.)

## CONCLUSION

For the reasons stated above, the Trustee's motion is granted; and

Hanono and Elegant Jewelry are directed to turn over the Pawn Ticket to the Trustee's counsel. The Court will enter an order consistent with this decision.



**Dated: Brooklyn, New York**
**October 5, 2016**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**